**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

Hannah Horsley
Scott E. Bradford
Assistant U.S. Attorneys
Hannah.Horsley@usdoj.gov
(503) 727-1000



**DEPARTMENT OF JUSTICE**
United States Attorney's Office
United States Attorney Billy J. Williams
District of Oregon

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

February 14, 2018

Kristen L. Winemiller
Pacific Northwest Law LLP
1255 NW 9th Ave., No. 11
Portland, OR 97209

> Re: *United States v. Paul Jumroon*, Case No. 3:18-CR-00036-BR
> Third Amended Plea Agreement Letter

Dear Counsel:

1. **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO), the U.S. Department of Justice Civil Rights Division (DOJ), and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned herein.

2. **Charges**: Defendant agrees to waive Indictment and plead guilty to the following charges set forth in the Information filed in this case:

> Count 1 – Conspiracy to Commit Visa Fraud, in violation of 18 U.S.C. § 371;
>
> Count 2 – Forced Labor, in violation of 18 U.S.C. §§ 2, 1589(a) and 1594(a); and
>
> Count 3 – Making and Subscribing a False Federal Income Tax Return for the calendar year 2013, in violation of 26 U.S.C. § 7206(1).

3. **Penalties**: The maximum sentence for each of the counts in the Information is as follows:

> Count 1 – five years' imprisonment, a fine of $250,000, three years of supervised release, and a $100 fee assessment;
>
> Count 2 – twenty years' imprisonment, a fine of $250,000, three years of supervised release, and a $100 fee assessment;

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 2

<u>Count 3</u> – three years' imprisonment, one year of supervised release, and a $100 fee assessment.

Defendant agrees to pay the $300 total fee assessment by the time of entry of guilty plea or explain to the Court why this cannot be done. Defendant further stipulates to the forfeiture of assets and to pay restitution as set forth below.

4.    **Elements of the Offenses**: In order for defendant to be found guilty of Counts 1 through 3 of the Information, the government must prove the following elements beyond a reasonable doubt:

**Count 1: Conspiracy to Commit Visa Fraud, in violation of 18 U.S.C. § 371:**

(1) During the time period alleged in the Information, there was an agreement between two or more persons to commit visa fraud, in violation of 18 U.S.C. § 1546(a);

(2) The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

(3) One of the members of the conspiracy performed at least one overt act in the District of Oregon for the purpose of carrying out the conspiracy.

The elements of the underlying offense of Visa Fraud, in violation of 18 U.S.C. § 1546(a) are:

(1) defendant caused another to knowingly utter, use, attempt to use, possess, obtain, accept or receive a visa or other document for entry into the United States; and

(2) that the defendant knew the document to have been procured by means of any false claim or statement, otherwise procured by fraud, or unlawfully obtained.

**Count 2: Forced Labor, in violation of 18 U.S.C. §§ 2, 1589(a) and 1594(a):**

(1) the defendant provided or obtained, or attempted to provide or obtain, the labor or services of another person;

(2) the defendant did so through any one, or any combination of, of the following means:

    a.  force, threats of force, physical restraint, or threats of physical restraint to that person or another person; or

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 3

      b. serious harm or threats of harm to that person or another person as defined in 18 U.S.C. § 1589(c)(2); or

      c. the abuse or threatened abuse of law or legal process as defined in 18 U.S.C. § 1589(c)(1); or

      d. by any scheme, plan, or pattern intended to cause the victim to believe that he would suffer serious harm or physical restraint if he did not perform such labor and services.

(3) the defendant acted knowingly.

**Count 3: Willfully Filing a False Income Tax Return, in violation of 26 U.S.C. § 7206(1):**

(1) The defendant made and subscribed a return, statement, or other document which was false as to a material matter;

(2) The return, statement, or other document contained a written declaration that it was made under the penalties of perjury;

(3) The defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and

(4) The defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

5.    **Factual Basis**: The defendant admits the elements of the offenses set forth in paragraph 4 above as to Counts 1 through 3 of the Information. Defendant further admits that the following is an accurate, but non-exhaustive, summary of the evidence collected regarding his offense conduct:

      At all times relevant to the Information, defendant Paul Jumroon was married to Tanya Jumroon. Paul Jumroon and Tanya Jumroon are naturalized U.S. citizens, originally from Thailand. They owned and operated Thai restaurants, including Somjai LLC d/b/a Curry in a Hurry, in Lake Oswego, Oregon, and Vilaivan LLC d/b/a Teriyaki Thai in Ridgefield, Washington. The restaurants were often understaffed.

      Beginning in 2011 and continuing through 2014, Paul Jumroon and others fraudulently obtained E-2 visas allowing people from Thailand to enter the United States to work at the Jumroons' Thai restaurants. In 2011, Paul Jumroon and others helped his sister-in-law, Wassana Namphochai (Wassana), obtain an E-2 investor visa, which is a nonimmigrant visa granted to foreign nationals who invest substantial money in a U.S. business and enter the U.S. solely to

develop or direct the operations of the business. The required intent to develop and direct the investment enterprise is established by showing at least 50% ownership of the enterprise, or possession of operational control through a managerial position or other corporate device. On June 8, 2011, defendant and others caused an E-2 visa application to be submitted that contained false representations that Wassana had invested $65,000 in Curry in a Hurry and that she was a manager and a 50% co-owner of the restaurant. Paul Jumroon knew those representations were not true. Wassana did transfer $65,000 to the Jumroons to make it appear as if a bona fide investment had been made, but that purported investment was a sham. The Jumroons had previously agreed that they would return the money to Wassana after the visa was granted, and they did. Wassana did not act as a manager or co-owner of Curry in a Hurry, but rather worked as a waitress.

The Jumroons and others caused similar misrepresentations to be made in two separate applications that were submitted on November 19, 2013 and August 19, 2014 to obtain an E-2 investor visa for the Jumroons' niece, Kunlarat Nampochai (Kunlarat). Those applications falsely claimed that Kunlarat had invested $60,000 of her own money in Teriyaki Thai and that she was a manager and 50% co-owner of the restaurant. Paul Jumroon knew those representations were not true. To lawfully obtain an E-2 investor visa, an applicant must show that the investor has placed capital at risk in the commercial sense with the objective of generating a profit. The capital must be subject to partial or total loss if the investment fails. Kunlarat did transfer $60,000 to the Jumroons to make it appear as if a bona fide investment had been made, but that purported investment was a sham because the funds belonged to somebody else. Kunlarat did not act as a manager or co-owner of Teriyaki Thai, but rather worked as a waitress.

Between 2012 and 2014, Paul Jumroon and others used those fraudulently obtained E-2 investor visas to obtain E-2 employee visas for five cooks from Thailand. An alien employee of a treaty investor may obtain an E-2 visa if the employee coming to the United States has special qualifications that make the alien's services essential to the efficient operation of the enterprise. Paul Jumroon traveled to Thailand multiple times between 2011 and 2014 to recruit cooks to come to the United States on E-2 employee visas and work at the Jumroons' restaurants. The defendant and others caused visa applications to be filed for cooks P.T, S.B. A.U., M.M., and W.S. that contained false representations about who owned and managed the restaurants and that the restaurants were paying for the employees' travel. In fact, the employees had to pay for their travel, and because they were indebted to the Jumroons for several months after they arrived in the U.S. because of those expenses, they felt compelled to keep working at the Jumroons' restaurants.

The first cook Paul Jumroon brought over from Thailand was victim P.T. Paul Jumroon promised P.T. room and board, better pay than he was receiving as a chef in Thailand, and a professional growth opportunity. In exchange, P.T. would owe a debt to Paul Jumroon for his

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 5

visa and travel expenses to the United States, which would be paid back over time. On June 6, 2012, P.T. entered the United States and began working as a cook at Curry in a Hurry the same day he arrived. P.T. ran away from the Jumroons on October 19, 2013.

The second cook Paul Jumroon brought over from Thailand was A.U. Paul Jumroon also promised A.U. room and board and more money than he was receiving as a chef in Thailand. A.U. arrived on April 30, 2013 and worked alongside P.T. at Curry in a Hurry until P.T. ran away in October 2013. Throughout that overlapping time period, A.U. and P.T. lived in the Jumroons' residence, and Paul Jumroon deducted $200 a month from A.U.'s wages and $300 a month from P.T.'s wages for rent without prior notice. While living at the Jumroons' residence, A.U. and P.T. shared a small windowless room, where they both slept on the floor, for several months. Neither A.U. nor P.T. were given a key or code to enter the house alone. For a time, Paul Jumroon held both A.U and P.T.'s passports and other identification documents.

Throughout that time period, both A.U. and P.T. worked longer hours and were paid less than Paul Jumroon promised them. They each worked approximately twelve hours per day, six to seven days per week, with one break each day. For several months, Paul Jumroon deducted approximately half of their wages in order to pay off the debt for the cost of their travel. Unbeknownst to each of them, Paul Jumroon inflated the amount of the purported debt, and ultimately withheld more than $5,000 more from each of their wages than they owed him. The Jumroons also failed to pay them fully for working overtime. While A.U. and P.T worked as cooks for Paul Jumroon, the defendant used abusive language towards both to compel them to work faster, and also threatened to send P.T. back to Thailand when he did not work fast enough. On one occasion, while working in the kitchen, A.U. was burned when hot water spilled on him, and although he told the defendant, he was given no medication and told that if he did not work, he would not get paid.

Defendant admits that A.U. and P.T. were underpaid for their work at Curry in a Hurry, and that unpaid wages due and owing to A.U. total $48,893.25, and unpaid wages due and owing to P.T. total $32,042. Between January 2014 and August 2015, defendant also recruited other cooks from Thailand to work in the Jumroons' restaurants whom he underpaid. Unpaid wages due and owing to M.M. total $40,565.59. Unpaid wages due and owing to W.S. total $9,890.11.

Between 2012 and 2015, defendant subscribed under penalties of perjury to multiple tax returns that he knew were not true and correct as to the gross receipts earned from the Jumroons' Thai restaurants, specifically cash income. On March 11, 2014, defendant electronically filed with the Internal Revenue Service, a U.S. Income Tax Return for an S Corporation, Form 1120S, for calendar year 2013, which he signed under the penalties of perjury in Oregon. That return falsely stated that gross receipts or sales, Line 1(a) were $547,655, and that total income, Line 6, was $263,263, which he knew were false. Defendant received additional taxable income during 2012, 2013, 2014 and 2015 in the amounts of at least $88,802, $162,109, $109,402 and $33,428,

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 6

respectively. He failed to report these amounts on the Forms 1040, U.S. Individual Income Tax Returns he jointly filed for those years. Defendant admits that due to his fraudulent omission of that cash income, there were understatements of tax due and owing in the amounts of $28,945 for 2012; $50,777 for 2013; $31,666 for 2014; and $8,996 for 2015.

6.      **No Prosecution**: The USAO and DOJ agree not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO and DOJ at the time of this agreement.

7.      **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range pursuant to the United States Sentencing Guidelines (U.S.S.G.), then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

8.      **Advisory Guidelines Calculation**: The parties agree to the following United States Sentencing Guidelines ("Guidelines") calculations:

**Count 1: Conspiracy to Commit Visa Fraud, in violation of 18 U.S.C. § 371:**

|       |                                                                    |
|-------|--------------------------------------------------------------------|
| 11    | Base Offense Level (U.S.S.G. §§ 2X1.1, 2L2.1)                      |
| +3    | involved six or more documents (§ 2L2.1(b)(2)(A))                  |
| +4    | visa used to facility a felony offense (§ 2L2.1(b)(3))             |
| 18    | Adjusted offense level                                             |

**Count 2: Forced Labor, in violation of 18 U.S.C. §§ 2, 1589(a) and 1594(a):**

|    |                                              |
|----|----------------------------------------------|
| 22 | Base Offense Level (U.S.S.G. § 2H4.1(a)(1))  |

**Count 3: Willfully Filing a False Income Tax Return, in violation of 26 U.S.C. § 7206(1):**

|    |                                              |
|----|----------------------------------------------|
| 16 | Base Offense Level (U.S.S.G. §§ 2T1.1, 2T4.1)|
| 16 | Adjusted offense level                       |

/ / /

/ / /

/ / /

/ / /

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 7

There is no agreement concerning whether any U.S.S.G. enhancements or adjustments apply with respect to the forced labor offense in Count 2 and any grouping adjustments in U.S.S.G § 3D1.4. Defendant reserves the right to argue that none apply, and that the adjusted offense level for Count 2 is 22. Defendant understands that the USAO and DOJ will argue that the following enhancements and adjustments do apply:

| | | |
|---|---|---|
| +3 | victim held more than one year (§ 2H4.1(b)(3)) | |
| +2 | committed during/in connection with another felony (§ 2H4.1(b)(4)) | |
| +2 | vulnerable victims (§ 3A1.1(b)(1)) | |
| +4 | Multiple victim/count adjustment (§§ 3D1.2, 3D1.4(a)) | |
| 33 | Adjusted offense level | |
| -3 | Acceptance of responsibility (if defendant qualifies)(§ 3E1.1) | |
| 30 | Total Offense Level | |

There is no agreement concerning defendant's criminal history calculation, but the parties estimate that he is within Criminal History Category I. If the parties are correct and the Court adopts the government's calculation, the advisory guideline range would be 97 to 121 months' imprisonment.

If the Court finds that defendant is in Criminal History Category I, defendant qualifies for a reduction for acceptance of responsibility, and the Court adopts the defendant's calculation, the total offense level would be 19 and the advisory guideline range would be 30 to 37 months.

9.     **Tax Loss Amount**: The defendant and the government agree that the total tax due and owing, without penalties and interest, is $120,384.

10.    **Acceptance of Responsibility**: Defendant must demonstrate to the Court that he fully admits and accepts responsibility under U.S.S.G. § 3E1.1 for his unlawful conduct in this case. If defendant does so, the USAO and DOJ will recommend a three-level reduction in defendant's offense level (two levels if defendant's offense level is less than 16). The USAO and DOJ agree that defendant may contest the application of sentencing enhancements and adjustments as set forth in paragraph 8 above without losing credit for acceptance of responsibility. The USAO and DOJ reserve the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in U.S.S.G. § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in U.S.S.G. § 3E1.1.

11.    **Sentencing Recommendation**: The USAO will recommend the low end of the applicable guideline range determined by the Court as long as defendant demonstrates an acceptance of responsibility as explained above. The USAO and DOJ do not object to defendant's request for placement at a Federal Prison Camp if a term of incarceration is imposed,

but defendant understands that the designation is solely within the discretion of the Federal Bureau of Prisons.

12. **Additional Departures, Adjustments, or Variances**: The USAO and DOJ agree not to seek any upward departures, adjustments, or variances to the advisory sentencing guideline range, or to seek a sentence in excess of that range, except as specified in this agreement.

Defendant reserves the right to seek a downward departure, adjustment or variance from the applicable sentencing guideline range determined by the Court and understands that the government reserves its right to oppose such a request.

Defendant agrees that, should he seek a downward departure, adjustment, or variance from the applicable guideline range determined by the Court and Probation Office, he will provide the government with notice of: (1) the factual basis for such request; (2) any evidence defendant intends to introduce or rely upon at the sentencing hearing; and (3) any witnesses, including expert witnesses, defendant intends to call or rely upon at the sentencing hearing. Such notice must be provided to the government no later than the Wednesday prior to the week during which the sentencing hearing is scheduled. Defendant agrees that if he fails to comply with this notice requirement, he will not oppose a government motion for a postponement of the sentencing hearing.

13. **Court Not Bound**: The Court is not bound by the recommendations of the parties or of the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

14. **Criminal Tax Loss and Civil Tax Proceedings**: The defendant understands the criminal tax loss amount does not include applicable statutory penalties and interest for which the defendant may be liable under the Internal Revenue Code and that the IRS may assess him penalties and interest in addition to the criminal tax loss amount. The defendant understands and agrees that this plea agreement does not prohibit the United States or the Internal Revenue Service from pursuing any civil or administrative proceeding against the defendant. The defendant agrees the USAO and Internal Revenue Service Criminal Investigation Division may disclose the criminal file in this case to any civil component of the Internal Revenue Service for assessment or collection of any taxes the defendant may owe. The defendant waives any rights he may have pursuant to 26 U.S.C. §§ 6103 and 7213 and Fed.R.Crim.P. 6(e), regarding privacy/secrecy of tax returns, return information, and grand jury material. The defendant does not waive, and retains, any right he may have to contest civilly or administratively any findings, assessments, or collection activity by the Internal Revenue Service.

15. **Tax Compliance and Special Conditions of Supervised Release**: Defendant agrees to special conditions of probation or supervised release, requiring him to file amended tax returns for 2012 through 2015 and to pay all taxes due and owing. Defendant further agrees to the special conditions that:

    a.    He meet with the IRS to determine his legal obligation to file tax returns and pay taxes and to sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax that he agrees to pay as restitution, including IRS Form 8821, "Tax Information Authorization;"

    b.    He not file any claim for refund of taxes represented by any amount of restitution paid pursuant to this agreement;

    c.    This agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period;

    d.    That unless the Director of the Administrative Office of the United States Courts directs defendant otherwise, all payments made pursuant to the Court's restitution order are to be sent only to the Clerk of the Court at the following address: Clerk, United States District Court, District of Oregon, 1000 SW Third Avenue, Portland, Oregon 97204;

    e.    He provide with each payment to the Clerk of the Court made pursuant to the District Court's restitution order:

        1.    His name and Social Security number;
        2.    The District Court docket number assigned to this case;
        3.    The periods for which restitution has been ordered; and
        4.    A statement that the payment is being submitted pursuant to the District Court's restitution order;

    f.    He include a request that the Clerk of the Court send the information, along with defendant's payments, to the appropriate IRS office;

    g.    He send a notice of any payments made pursuant to the agreement, including the information listed in the previous paragraph, to the IRS at the following address: IRS -RACS Attn: Mail Stop 6261, Restitution, 333 W. Pershing Ave, Kansas City, MO 64108.

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 10

  h. He is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the IRS and identified by it as pertaining to his particular liability.

16. **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range as determined by the Court. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2).

17. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

18. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

  If defendant believes that the government has breached the plea agreement, he must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, he has waived any such claim and is precluded from raising a breach claim for the first time on appeal.

19. **Restitution:** Defendant agrees fully to disclose all assets in which defendant has any interest or over which defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement provided herein by April 30, 2018, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on defendant. Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information. Defendant also authorizes the U.S.

Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under U.S.S.G § 3E1.1.

**Transfer of Assets**
Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships and corporations.

**Restitution Amount**
The Court shall order restitution to each victim in the full amount of each victim's losses as determined by the Court. Pursuant to 18 U.S.C. § 1593, the defendant agrees to pay full restitution to each victim in the following amounts:

$32,042 to victim P.T
$48,893.25 to victim A.U.
$40,565.59 to victim M.M.
$9,890.11 to victim W.S.

Defendant understands and agrees that the total amount of any monetary judgment that the court orders defendant to pay will be due and payable immediately. Defendant further understands and agrees that pursuant to Title 18, United States Code, Section 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution. Additionally, defendant understands and agrees that the government may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613 and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program (TOP) to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

Pursuant to Title 18, United States Code, Section 3612(b)(F) defendant understands and agrees that until a fine or restitution order is paid in full, defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to Title 18, United States Code, Section 3664(k), defendant shall notify the court and the U.S. Attorney's Office immediately of any material change in

defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

**20.** **Forfeiture Terms:**

    A. **Assets and Authority:** By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. §§ 982(a)(6) and 1594 including the following seized assets:

        a. Approximately $6,347.27 in United States currency seized on September 14, 2015 from 460 NW 174th Terrace; Beaverton, Oregon;
        b. Approximately $66,200 in United States currency seized on September 14, 2015 from Safe Deposit Box #149 located at Chase Bank, 111 S. State Street; Lake Oswego, Oregon; and
        c. Seven One-Ounce Gold Bars seized on September 14, 2015 from Safe Deposit Box #149 located at Chase Bank, 111 S. State Street; Lake Oswego, Oregon,

which defendant admits constitute the proceeds of defendant's criminal activity or were used to facilitate defendant's criminal activity in violation of 18 U.S.C. §§ 371 and 1589(a) as set forth in Counts 1 and 2 of the Information.

Defendant further agrees not to file a claim and will withdraw any claim already filed, to any of the above-listed property in any civil proceeding, administrative or judicial, which has been or may be initiated. Defendant further waives the right to notice of any forfeiture proceeding involving this property, and agrees not to assist others in filing a claim or contesting ownership of the property listed in any forfeiture proceeding, including in any ancillary proceeding initiated by third parties in this case.

    B. **Money Judgment:** By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to an in personam money judgment in the amount of $131,390.95 pursuant to 18 U.S.C. §§ 982(a)(6) and 1594. Specifically, defendant admits that $131,390.95 represents the value of the proceeds he personally obtained, directly or indirectly, as a result of defendant's criminal conduct set forth in Counts 1 and 2 of the Information. The government will agree to reduce the sum of the money judgment by the value of the sum of forfeited assets listed above.

    C. **Transfer of Forfeited Assets:** Pursuant to 18 U.S.C. § 1594(f), the parties understand that the Attorney General shall transfer assets forfeited pursuant to this

        section, or the proceeds derived from the sale thereof, to satisfy victim restitution orders arising from a violation of 18 U.S.C. § 1589(a).

    D.    **No Alteration or Satisfaction**: Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets, including any claim or defense under the Eighth Amendment to the United States Constitution, and any rights under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant further agrees forfeiture of defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon defendant in addition to forfeiture, except as set forth in paragraph 20.C. above.

21.    **Memorialization of Agreement**: No promises, agreements or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Kristen L. Winemiller
Re: Paul Jumroon Plea Letter
Page 14

22. **Deadline**: A guilty plea hearing is scheduled for February 14, 2108 at 2:30 p.m.

Sincerely,

BILLY J. WILLIAMS  
United States Attorney

HANNAH HORSLEY  
SCOTT E. BRADFORD  
Assistant United States Attorneys

JOHN M. GORE  
Acting Assistant Attorney General  
Civil Rights Division

LINDSEY N. ROBERSON  
Trial Attorney, Civil Rights Division

I have carefully reviewed every part of this agreement with my attorney. I understand and voluntarily agree to its terms. I expressly waive my rights to appeal as outlined in this agreement. I wish to plead guilty because, in fact, I am guilty.

2/14/2018  
Date

PAUL JUMROON, Defendant

I represent the defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

2/14/2018  
Date

KRISTEN L. WINEMILLER, Attorney for Defendant